# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| AL B. HILL, as Receiver for Credit Nation Capital, LLC, Credit Nation Acceptance, LLC, Credit Nation Auto Sales, LLC, American Motor Credit, LLC, and Spaghetti Junction, LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>BOBBY EUGENE GUESS, DAVID SAVAGE, and MICHAEL SWEET,<br><br>  Defendants. | 1:16-cv-4770-WSD |

## OPINION AND ORDER

This matter is before the Court on Receiver Al B. Hill's, as Receiver for Credit Nation Capital, LLC, Credit Nation Acceptance, LLC, Credit Nation Auto Sales, LLC, American Motor Credit, LLC, and Spaghetti Junction, LLC ("Receiver") Motion for Default Judgment as to Liability Against Defendant Bobby Eugene Guess and Request for an Evidentiary Hearing on Damages [13] ("Motion for Default Judgment").

## I. BACKGROUND

### A. The Underlying SEC Litigation

On November 10, 2016, the United States Securities and Exchange Commission ("SEC") filed a complaint seeking injunctive relief and damages against James A. Torchia ("Torchia") and his companies Credit Nation Capital, LLC ("CN Capital"), Credit Nation Acceptance, LLC, Credit Nation Auto Sales, LLC, American Motor Credit, LLC, and Spaghetti Junction, LLC (collectively, the "Receivership Companies"). The SEC also sought appointment of a receiver for the Receivership Companies and Torchia. That case is pending in the Northern District of Georgia as Civil Action No. 1:15-cv-3904-WSD (the "SEC Litigation").

The SEC Litigation involved allegations that Torchia and the Receivership Companies participated in two fraudulent investment schemes through the sale of unregistered securities to the investing public. One involved the alleged sale of millions of dollars of promissory notes with a supposed nine percent return to investors, and the other involved the sale of fractional interests in life settlement contracts whereby the purchasers were promised shares of life insurance proceeds when the insureds passed away. On April 25, 2016, the Court entered an order granting a preliminary injunction and freezing the assets of Torchia and the

2

Receivership Companies, and appointing the Receiver to oversee the Receivership. (No. 1:15-cv-3904-WSD [66]).

B.  The Receiver's Instant Action and Motion for Default Judgment

On December 28, 2016, as part of his duties under the Receivership, the Receiver filed the Complaint [1] in this action seeking to recover sales commissions that CN Capital paid to Defendants for allegedly selling promissory notes and/or fractional interest in insurance policies to investors. The Complaint alleges that these payments "constituted fraudulent transfers of the assets of CN Capital at the direction of Torchia," and the "payments to [] [D]efendants unjustly enriched them and constituted money had and received, which in equity and good conscience [] [D]efendants may not retain." ([1] at 3). The Complaint asserts claims of fraudulent transfers, unjust enrichment, and money had and received. The Complaint also prays for a money judgment against Defendant Guess in the amount of $1,542,024.16. ([1] at 14).

On January 10, 2017, Defendant Guess was served with the Complaint. ([13] at 2; [13.1] ¶ 5). On March 7, 2017, as the result of Defendant Guess's failure to plead, defend, or otherwise respond to the Complaint, the Clerk of Court entered default against him. On July 5, 2017, the Receiver filed his Motion for Default Judgment arguing that Defendant Guess's failure to plead or otherwise

respond to the Complaint resulted in Defendant Guess's admission of each paragraph of the Complaint, including those paragraphs and statements concerning fraudulent transfers, unjust enrichment, money had and received, and the amounts claimed. ([13] at 3-4).

## II. DISCUSSION

### A. Legal Standard

Rule 55(b) of the Federal Rules of Civil Procedure provides that default judgment may be entered against defaulting defendants as follows:

> (1) **By the Clerk**. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) **By the Court**. In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b).

"[T]here is a strong policy of determining cases on their merits . . . . [Courts] therefore view defaults with disfavor." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). "The entry of a default judgment is committed to the discretion of the district court." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)).

When considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief. Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988). If "the plaintiff has alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. at 1245. "[W]hile a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Cotton, 402 F.3d at 1278 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

B. <u>Analysis</u>

1. <u>Fraudulent Transfers</u>

The Complaint first alleges the sales commissions that CN Capital paid Defendant Guess constituted fraudulent transfers of the assets of CN Capital at the direction of Torchia. ([1] at 3). The Complaint states that "Torchia and CN Capital mischaracterized the payments as 'salaries' to disguise the commission payments and to attempt to portray [D]efendants as associated persons of an issuer of securities who were not required to be associated with registered broker-dealers." The Complaint further states:

> In reality, [] [D]efendants' primary function was to find investors and close sales. To do so, [] [D]efendants engaged in written and oral communications with potential investors and, in some instances, television and radio commercials and print advertisements designed to attract investors. [D]efendants engaged in multiple sales efforts and had direct contact with many potential investors, to persuade them to purchase promissory notes and/or to purchase interests in life insurance policies offered by CN Capital or Credit Nation Acceptance. [D]efendants' compensation from CN Capital was directly tied to their actual production of sales. . . . Without the active solicitation of investors by [] [D]efendants and other sales personnel, the fraud would not have occurred.

([1] ¶¶ 27, 29). The Complaint concludes that CN Capital was operated as a Ponzi scheme, was insolvent from its inception, was insolvent at the time of each and every payment made to Defendants, and the transfers that Torchia directed to Defendants were made in furtherance of the Ponzi scheme because they were made

6

in connection with bringing in new investment money to perpetuate the scheme. ([1] ¶¶ 36-38).

It is unclear what standard the Receiver seeks this Court to apply to the alleged fraudulent transfers to Defendant Guess. The Complaint states:

> Under the Georgia Uniform Fraudulent Transfer Act, the Georgia Uniform Voidable Transactions Act, and the fraudulent transfer laws of the states of residence of the defendants, the defendants are liable to the Receiver, on behalf of CN Capital, for the fraudulent transfers of funds that they received, plus interest at the legal rate from the time of receipt.

([1] ¶ 40). Without more information, the Court cannot evaluate the legal sufficiency of the allegations and ensure that the Complaint states facts to support the elements of the claims alleged to show plausible claims for relief against Defendant Guess. Even if the Court applied one of the standards identified in the Complaint, the Court could still not fully evaluate whether the transfers as to Defendant Guess were in fact fraudulent. That is, the Court must be able to determine that the facts alleged in the Complaint, which Defendant Guess is deemed to have admitted, support the claims asserted sufficiently to allow the Court to enter judgment in a specific dollar amount. The Court concludes that the Motion presented by the Receiver does not sufficiently show facts to support a claim warranting default judgment relating to the fraudulent transfer of sales commissions to Defendant Guess.

7

2. <u>Unjust Enrichment</u>

The Complaint next alleges a claim for unjust enrichment and constructive trust. The Complaint alleges that the "payments made to [D]efendants in connection with their sales are proceeds that were unlawfully obtained from investors by means of artifice and fraud." ([1] ¶ 42). The Complaint further alleges that Defendants "accepted, retained, and wrongfully benefited from the transfers from CN Capital," and "[i]t would be inequitable for [] [D]efendants to retain the funds they received from CN Capital." ([1] ¶¶ 43-44).

In the absence of enforceable contract, a plaintiff may be able to recover under a theory of unjust enrichment, claiming a benefit conferred on the defendant for which the plaintiff received no corresponding return. <u>Ga. Tile Distribs., Inc. v. Zumpano Enters., Inc.</u>, 422 S.E.2d 906, 908 (Ga. Ct. App. 1992). "Under Georgia law, an unjust enrichment claim requires the plaintiff to establish the following (1) that the plaintiff conferred a benefit on the defendant and (2) that equity requires the defendant to compensate the plaintiff for this benefit. " <u>Chem-Nuclear Sys., Inc. v. Arivec Chems., Inc.</u>, 978 F. Supp. 1105, 1110 (N.D. Ga. 1997.

Although the allegations of the Complaint are deemed admitted, the Court finds that the Receiver has failed to sufficiently plead a claim for unjust enrichment specifically as to Defendant Guess. Neither the Complaint nor the Motion for

Default Judgment provide facts detailed enough for the Court to conclude that Defendant Guess was unjustly enriched.

### 3. Money Had and Received

Finally, the Complaint alleges a claim for money had and received. It states that CN Capital transferred over $2.2 million to Defendants, CN Capital has been insolvent since its inception, and it is the rightful owner of the funds transferred to Defendants. ([1] ¶¶ 48-49). The Complaint also includes a demand for the return of the funds for the benefit of CN Capital. ([1] ¶ 50).

"To establish a claim for money had and received a plaintiff must show (1) that a party has received money justly belonging to the plaintiff; and (2) that the plaintiff has made a demand for repayment which was refused." Sec. & Exch. Comm'n v. Price, No. 1:12-cv-2296, 2015 WL 11198937, at *6 (N.D. Ga. Mar. 31, 2015) (citing City of Atlanta v. Hotels.com, 710 S.E.2d 766, 770 (Ga. 2011)). "An action for 'money had and received' is the functional equivalent of an action for unjust enrichment." Id. at *6 n.5; see McCaughey v. Bank of America, N.A., 279 F. App'x 794, 797 (11th Cir. 2008) ("[Money had and received] is merely one form of action to recover damages based on unjust enrichment.").

An action for money had and received is "founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is a

9

substitute for a suit in equity." Gulf Life Ins. Co. v. Folsom, 349 S.E.2d 368, 370-71 (Ga. 1986. "Thus, recovery is authorized against one who holds the money of another which he ought in equity and good conscience to refund." Piedmont Eng'g & Const. Corp. v. Balcor Partners-84 II, Inc., 396 S.E.2d 279, 281 (Ga. Ct. App. 1990). "In an action for money had and received, the plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment—subject to a weighing of the equities between the parties by the trier of fact." Wyatt v. Hertz Claim Mgmt. Corp., 511 S.E.2d 630, 632 (Ga. Ct. App. 1999).

As with the other causes of action in the Complaint, the Court cannot conclude that the Receiver has stated a plausible claim for relief as to money had and received. The Complaint does not allege facts specific enough for the Court to determine whether Defendant Guess received money justly belonging to CN Capital. While the Complaint makes a demand for the repayment of the funds, it does not provide any facts regarding whether demand was made prior to the filing of the Complaint or whether the return of the funds was refused.

## C. Receiver's Election

Rule 55(b)(2) allows for the Court to hold a hearing to "(C) establish the trust of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2)(C)-(D). Based on this authority, the Court presents two options to the Receiver. He may file a Revised Motion for Default Judgment showing the specific facts alleged in the Complaint that support the elements of the claims asserted against Defendant Guess. If the Court agrees to enter Default Judgment on one or more of the claims asserted, a hearing will be scheduled to allow the Receiver to present evidence of the judgment the Receiver asserts should be entered. Alternatively, the Receiver can request a hearing at which he may present evidence to support the claim elements, and the amount of the judgment the Receiver claims should be entered against Defendant Guess.[1] The Receiver should choose between these two alternatives on or before December 6, 2017. If he chooses to file a Revised Motion for Default Judgment, it must be filed on or before January 5, 2018.

---

[1] The Receiver seeks, according to the Complaint, to recover a judgment against Defendant Guess in the amount $1,542,024.16 "or such other sums as may be proven at trial, together with appropriate prejudgment interest, the costs of this action, and such other and further relief as the Court deems just and proper." ([1] ¶ 53).

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Receiver's Motion for Default Judgment as to Liability Against Defendant Bobby Eugene Guess and Request for an Evidentiary Hearing on Damages [13] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the Receiver shall notify the Court, on or before December 6, 2017, as to which alternative he chooses. Should the Receiver choose to file a Revised Motion for Default Judgment, he shall do so on or before January 5, 2018.

**IT IS FURTHER ORDERED** that the Receiver shall provide a copy of this Order to Defendant Guess on or before December 15, 2017, so that he may submit any objections to the Order should he have any.[2]

**SO ORDERED** this 1st day of December, 2017.

_William S. Duffey_
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[2] The Court has reason to believe that Defendant Guess may no longer be incarcerated at the Collin County Detention Facility as alleged in the Complaint. The Court directs the Receiver to determine Defendant Guess's location as soon as possible.